UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Susan B. Daniels,

    Plaintiff,

-V-                                              Case No. 2:05-cv-0114
                                              JUDGE SMITH
                                              Magistrate Judge King

Retired Senior Volunteer Program,
et al.,

    Defendants.

## OPINION AND ORDER

Plaintiff, who is proceeding *pro se*, brings claims under 42 U.S.C. § 1983, asserting that defendants violated her due process rights when they terminated her participation in a VISTA volunteer program.  The non-federal defendants move to dismiss for lack of capacity to be sued and for failure to state a claim upon which relief can be granted.  The federal defendants move to dismiss based upon failure to state a claim upon which relief can be granted, failure to exhaust administrative remedies, and untimeliness.  For the reasons that follow the Court grants defendants' motions to dismiss.

## I.  Facts

For purposes of ruling on defendants' motions to dismiss, the Court accepts as true the

well-pleaded factual allegations set forth in the complaint.

Plaintiff is an individual citizen of the State of Ohio.  The non-federal defendants are the Retired & Senior Volunteer Program ("RSVP"), and University of Rio Grande ("URG").  The federal defendants are the Corporation for National and Community Service ("CNCS"), AmeriCorps*VISTA, and the United States Attorney for the Southern District of Ohio.

In November 2002, plaintiff applied for a position as a volunteer with AmeriCorps* VISTA and was accepted by RSVP as a literacy volunteer.  On January 5, 2003, she moved to Gallia County, Ohio.  Plaintiff wanted to be a VISTA volunteer because she wanted to be of service and because the VISTA handbook and newspaper articles indicated that such volunteer work would provide a way to build a resume for non-profit work.  Plaintiff believed the VISTA volunteer position would provide her with a good reference for future work in a non-profit service agency.

Plaintiff entered into a contract to serve as a VISTA volunteer for a definite period of time, namely, one year with the possibility of renewal for a second year.  Plaintiff was to have been provided a bi-weekly living allowance, health insurance, and life insurance during this period, as well as relocation expenses, travel expenses and mileage reimbursement.  She was also to have received a stipend of $1,200.00 or an education award of $4,725.00 which could be used to pay student loans at the completion of the one-year period.  CNCS, URG and RSVP were parties to the contract.

URG requested that plaintiff be terminated from the program for cause.  URG listed one of the causes for termination set forth in 45 CFR 1210.  The Ohio CNCS office investigated the charges but could not find evidence to support them.  Nonetheless, because the sponsor

requested plaintiff's removal, the director of the Ohio CNCS office had to comply, and plaintiff was given fifteen days to find another AmeriCorps*VISTA program to accept her. This was done even though plaintiff had informed URG, RSVP and the Ohio CNCS office that she had signed a one-year lease for her living quarters, and there were no literacy or similar suitable VISTA positions within a fifty-mile radius of her apartment.

Plaintiff asserts that defendants violated her due process rights under the Fourteenth Amendment to the United States Constitution and that they acted in bad faith. Plaintiff alleges that URG and RSVP did not follow the discipline policy set forth in the VISTA handbook and the governing federal rules and regulations. The director of the program, Susan Rogers, did not inform plaintiff in writing of the charges against her. Plaintiff believes the decision to terminate her was made before she was given an indication that there was concern about her conduct or performance as a volunteer.

Plaintiff filed this action on February 3, 2005. She seeks monetary damages.

## II. Motion to Dismiss

A motion to dismiss for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All well-pleaded allegation must be taken as true and be construed most favorably toward the non-movant. Schuer v. Rhodes, 416 U.S. 232, 236 (1974). A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a

motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 857, 858 (6th Cir. 1976). Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. Id.

On the other hand, more than bare assertions of legal conclusions is required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (emphasis in original, quotes omitted).

> "[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

Id.

### III.  Discussion

### A.  Motion to dismiss of URG and RSVP

Defendants URG and RSVP maintain that RSVP is not a separate entity capable of being sued, and therefore the Court lacks personal jurisdiction over RSVP.  URG and RSVP also argue that they are not state actors for purposes of an action brought under 42 U.S.C. § 1983.

### 1.  Capacity to be sued

Although URG and RSVP couch their first argument in terms of personal jurisdiction under Fed. R. Civ. P. 4, it is clear that the thrust of their argument is that RSVP lacks the capacity to be sued.  See Reply Brief (Doc. 19) at 6-9.  Capacity to sue or be sued is governed by Fed. R. Civ. P. 17(b).  Lack of capacity to be sued is recognized as an affirmative defense.  See Fed. R. Civ. P. 9(a); Taylor v. Britten, No. Civ. A. 302CV1219D, 2003 WL 21418752, at * 4 (N.D. Tex. Mar. 3, 2003); Nat'l Acceptance Co. of Amer., 155 F.R.D. 631, 639 (E.D. Wis. 1994); Fields v. Dailey, 68 Ohio App.3d 33, 43 (1990).

Rule 17(b) provides as follows:

Capacity to Sue or be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., Sections 754 and 959(a).

Fed. R. Civ. P. 17(b)(emphasis added). RSVP bears the burden of demonstrating lack of capacity by "specific negative averments, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." Fed. R. Civ. P. 9(a). Plaintiff was under no obligation to plead facts supporting capacity to be sued in her complaint. Id.

RSVP has offered scant information about itself. Given the dearth of information about RSVP, that RSVP bears the burden of demonstrating lack of capacity to be sued, and that this matter is before the Court on a Rule 12 motion to dismiss, the Court is not prepared at this juncture to rule definitively that RSVP lacks the capacity to be sued.

### 2. State actors

URG and RSVP also argue that they are not state actors for purposes of § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, . . . .

42 U.S.C. § 1983. To state a claim upon which relief can be granted under § 1983, the plaintiff must show that "(1) the conduct in controversy was committed by a person acting under color of law, and (2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory." Kottmyer v. Maas, No. 05-3033, 2006 U.S. App. LEXIS 1075, at *6 (6th Cir. Jan. 18, 2006) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 930 (1982)). Put differently, "[p]rivate actors can only be held liable under Section 1983 if their 'actions so approximate state

action that they may be fairly attributed to the State.'" Reister v. Riverside Cmty. Sch., 257 F. Supp. 2d 968, 971 (S.D. Ohio 2002).

Courts use four tests to determine whether private conduct may be attributed to the state. The first three are grouped together and sometimes referred to as the Blum trilogy. Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 180 F.3d 758, 762 (6th Cir. 1999) (citing Blum v. Yaretsky, 457 U.S. 991 (1982)) (rev'd, 531 U.S. 288 (2001) (reversed as to whether the Academy was a state actor, but not as to the tests themselves). The Blum trilogy consists of the following tests: (1) the public function test—whether the private entity exercises powers which are traditionally exclusively reserved to the state; (2) the state compulsion test—whether the state has so coerced or encouraged a private entity to act that the choice of that entity must be regarded as the choice of the state; and (3) the symbiotic relationship or nexus test—whether there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. Bell v. Mgmt. & Training Corp., No. 03-4526, 2005 U.S. App. LEXIS, at *5 (6th Cir. Feb. 4, 2005); Reister v. Riverside Cmty. Sch., 257 F. Supp. 2d 968, 971 (S.D. Ohio 2002).

The United States Supreme Court handed down the fourth test when it decided the Brentwood case. Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001); Chapman v. Higbee, 319 F.3d 825, 834 (6th Cir. 2003). The fourth test is known as the "entwinement" test. Brentwood, supra; Chapman, supra; Reister, 257 F. Supp. at 971-72. The entwinement test considers whether a private entity is "entwined with governmental policies," or whether the "government is 'entwined in [its] management or control.'" Brentwood, 531 U.S. at 296 (citing Evans v. Newton, 382 U.S. 296, 299, 301 (1966)).

7

### 1. Public function test

The public function test entails powers that are traditionally exclusively reserved to the state such as holding elections and eminent domain. Wolotsky v. Huhn, 960 F.2d 1331 (6th Cir. 1992) (citing Flagg Bros. v. Brooks, 436 U.S. 149, 157 (1978); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974)). Of course, URG's sponsorship of RSVP, and its function as a private university do not qualify as that type of public function.

### 2. State compulsion test

Coercion or encouragement perpetrated by the state typically takes the form of action undertaken by the state that compels a private entity to act in a particular way. See, e.g., Bell v. Maryland, 378 U.S. 226, 333 (1964) (state licensing and regulation do not convert a private entity into a state actor); Wolotsky v. Huhn, 960 F.2d 1331, 1335 ("The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state."); Cornett v. Mason Volunteer Fire Co., No. 95-3010, 1996 U.S. App. LEXIS 14444, at *6 (6th Cir. May 8, 1996).

There is no indication in the complaint or otherwise that the government encouraged or coerced URG or RSVP to request that plaintiff be removed from her volunteer position. Therefore, URG and RSVP are not state actors under the state compulsion test.

### 3. Symbiotic relationship/nexus test

Under the symbiotic relationship/nexus test, the inquiry is whether "there is a sufficiently close nexus between the state and the *challenged action* of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." Id. at *8-9 (citing Wolotsky, 960 F.2d at 1335) (emphasis added). Thus, the inquiry is *not* whether the state and URG or RSVP generally have a close nexus, but whether there is a close nexus between the state and URG's or RSVP's specific action in suggesting that plaintiff be removed from her volunteer position.

Plaintiff does not allege that anyone other than URG is responsible for generating the decision to remove her. (See Pl's. Answer to Def. URG & Def. RSVP Mot. to Dismiss Ex. 1) (letter from URG notifying her of its decision to remover her from the VISTA position). There is no basis for inferring a symbiotic relationship or close nexus between the government and URG's action in requesting plaintiff's removal from her volunteer position. See Rendell-Baker v. Kohn, 457 U.S. 830, 841 (holding that when state regulation neither compels nor influences personnel decisions, there is no symbiotic relationship or nexus).

That URG could not remove plaintiff by itself, but rather had to send the removal request to the State Office of CNCS, does not necessitate a finding of close nexus. A public entity's actions in compliance with a private entity's recommendations do not convert the private entity into a state actor. Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 193-96 (1998).

### 4. Entwinement test

The entwinement test asks whether the "nominally private character" of the private entity "is overborne by the pervasive entwinement of public institutions and public officials in its

composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it." <u>Brentwood</u>, 531 U.S. at 298. The U.S. Supreme Court described what it meant by "entwinement" by referring to the specific facts of <u>Brentwood</u>. In that case, the Court addressed the issue of whether the Tennessee Secondary School Athletic Association (TSSAA), which was "incorporated to regulate interscholastic athletic competition among public and private secondary schools," was a state actor when it enforced its rules against a member school. <u>Brentwood</u>, 531 U.S. at 290. The Court noted that two types of entwinement existed between the TSSAA and the state: bottom-up entwinement and top-down entwinement. There was bottom-up entwinement in <u>Brentwood</u> because, the Court explained, 84% of the TSSAA consisted of "public schools represented by their officials acting in their official capacity to provide an integral element of secondary public schooling." <u>Id.</u> at 300. The Court further noted the presence of bottom-up entwinement in the fact that "[t]here would be no recognizable Association, legal or tangible, without the public school officials, who do not merely control but overwhelmingly perform all but the purely ministerial acts by which the Association exists and functions in practical terms." <u>Id.</u>

The Court found top-down entwinement in <u>Brentwood</u> because "State Board members [were] assigned ex officio to serve as members of the board of control and legislative council, and the Association's ministerial employees [were] treated as state employees to the extent of being eligible for membership in the state retirement system." <u>Id.</u>

Viewing the instant case through the <u>Brentwood</u> lens, it is evident that there is no entwinement sufficient to support a finding of state action on the part of URG or RSVP. There is no bottom-up entwinement between the state and URG because although Americorps/VISTA

10

and URG may share some personnel, neither one would cease to exist if it lacked the involvement of the other. Furthermore, both the Americorps/VISTA Member Handbook and plaintiff's Answer to Defendants URG & RSVP's Motion to Dismiss highlight the fact that those who volunteer as AmeriCorps*VISTA leaders are never considered employees of that entity—rather, they are employees of the Sponsoring Organization (in this case URG). (Pl's. Answer to Def. URG & Def. RSVP Mot. to Dismiss, and Ex. 4.). Finally, the employees of the public program (RSVP) do not perform "all but the purely ministerial acts by which the [University] exists and functions in practical terms." Rather, it is URG which influences the conduct of RSVP, and not vice versa. Furthermore, it bears repeating that a public entity's actions in compliance with a private entity's recommendations do not convert the private entity into a state actor. Tarkanian, 488 U.S. at 193-96.

There is no bottom-up entwinement between the state and URG because there is no basis for concluding that government officials sit on the board of URG or otherwise control it, and because URG's ministerial employees are not treated as state employees at all, let alone "to the extent of being eligible for membership in the state retirement system."

In sum, plaintiff has not pleaded facts showing the required nexus between URG/RSVP and the government. For the above reasons, Court finds that URG and RSVP are not state actors for purposes of a claim under § 1983. Plaintiff's claims against URG and RSVP will therefore be dismissed.

In the alternative, the Court would reach the same result if it construed plaintiff's complaint as raising a claim under the Due Process clause of the Fifth Amendment. See Smith v.

Kitchen, 156 F.3d 1025, 1028-29 (10th Cir. 1998); Rank v. Nimmo, 677 F.2d 692, 701-02 (9th Cir. 1982).

### B.  Federal defendants' motion to dismiss

The federal defendants move to dismiss based upon failure to state a claim upon which relief can be granted, failure to exhaust administrative remedies, and untimeliness.

#### 1.  Failure to state a claim

Plaintiff also asserts a due process claim against the federal defendants.  By its own terms, the Fourteenth Amendment applies to the States, not the federal government.  Construing plaintiff's complaint liberally, the Court finds that plaintiff seeks to assert a claim against the federal defendants under the Due Process Clause of the Fifth Amendment.

The federal defendants argue that plaintiff has failed to state a claim against them upon which relief can be granted because plaintiff has not identified any actionable conduct on the part of the federal defendants.  The federal defendants accurately characterize plaintiff's factual allegations against them as follows:

> 1. The State [CNCS] Director investigated the charges brought by the University of Rio Grande and could not find evidence of the charges. (p. 6)
>
> 2. The State Director, since a sponsor requested removal of a volunteer, had to comply, but advised Plaintiff that she would have time to find another VISTA program. (p. 6)
>
> 3. The State Office told Plaintiff no funds were available for relocation. (p. 6)

4.  The State Office in a personal meeting told Plaintiff the sponsor requested early termination. (p. 8)

5.  The State Director notified Plaintiff that although the sponsor requested removal of Plaintiff for cause, the State Director's findings were inconclusive. However, the State Director had to honor the request for removal. (p. 9)

Plaintiff argues that the federal defendants violated her due process rights when they removed her in violation of applicable federal regulations.  Plaintiff, however, does not refer to the provisions the federal defendants allegedly violated, does not explain how they violated them, and does not show how such violations were a denial of due process.

Simply stating facts and referring to the concept of due process does not necessarily constitute a viable claim.  The Court agrees with the federal defendants that plaintiff has failed to plead *facts* against them that give rise to a claim upon which relief may be granted.

Plaintiff offers to amend her complaint should the Court find it deficient as to the federal defendants.  Plaintiff, however, does not suggest what additional facts she would allege in an amended complaint.  In these circumstances, the plaintiff's request to amend is not well-taken. For these reasons, the Court concludes that plaintiff's claims against the federal defendants are subject to dismissal for failure to state a claim upon which relief may be granted.

### 2.  Failure to exhaust administrative remedies

In the alternative, the federal defendants argue that plaintiff's claims are barred for failure to exhaust administrative remedies.

The federal defendants point out that a VISTA volunteer who believes the Corporation staff failed to comply with applicable VISTA procedures when applying the lack of suitable assignment termination procedure may file a grievance with the Corporation under 45 C.F.R. Part 1211. If the Corporation State Program Director proposes termination for lack of suitable assignment, the volunteer is permitted to respond in writing, and to seek reassignment to another VISTA project. 45 C.F.R. §1210.3-2. The volunteer may file an informal grievance under 45C.F.R. §1211.1-10. If dissatisfied with the decision of the State Program Director, the volunteer may file a formal grievance with the Area Manager. 45 C.F.R. §1211.1-11. If dissatisfied with the Area Manager's decision, the volunteer may request an investigation by a Grievance Examiner. 45 C.F.R. §1211.1-12. The grievance file is submitted to the Director of VISTA, who issues a final written decision. 45 C.F.R. §1211.1-14.  Plaintiff acknowledges she took none of these steps, and concedes on page 15 of her memorandum that " . . . perhaps termination for lack of suitable assignment may be grieved."

Plaintiff argues that she was not required to exhaust administrative remedies because she brings a constitutional claim, citing Constantino v. TRW, Inc., 13 F.3d 969, 975 (6th Cir. 1994). In Constantino, the plaintiff challenged the retroactive application of interest rates established in the Tax Reform Act.  The Sixth Circuit in Contantino found that an administrative hearing on the subject would have been futile.  Here, in contrast, plaintiff challenges the *conduct* of the federal defendants in carrying out URG's directive to terminate plaintiff from the program.  If an administrative hearing in this case would lead to a replacement position for plaintiff, pursuing such a remedy would not be futile.

For the above reasons, the Court concludes that plaintiff's claims against the federal defendants are subject to dismissal for failure to exhaust administrative remedies.

### 3. Untimeliness

Lastly, the federal defendants argue that plaintiff's claims against them were not timely filed. The federal defendant rely upon <u>Cameron v. Wofford</u>, 955 F. Supp. 1319 (D. Kan. 1997). <u>Cameron</u> involved a claim of racial discrimination brought by a former VISTA volunteer. In ruling that the plaintiff's claim was untimely, the court in <u>Cameron</u> relied on 45 C.F.R. § 1225.21, which provides as follows:

> (a) A Volunteer, trainee, or applicant is authorized to file a civil action in an appropriate U.S. District Court:
>
> (1) Within thirty (30) calendar days of his or her receipt of notice of final action taken by the agency.
>
> (2) After one hundred eighty (180) calendar days from the date of filing a complaint with the agency if there has been no final agency action.
>
> (b) For those complaints alleging discrimination that occur outside the United States, the U.S. District Court for the District of Columbia shall be deemed the appropriate forum.

The above code section, however, is part of a regulatory scheme that addresses discrimination claims by volunteers.

Here, plaintiff does not purport to bring a discrimination claim. Hence, the limitation periods set forth in 45 C.F.R. § 1225.21 do not apply. For this reason, the Court declines to dismiss plaintiff's claims against the federal defendants on the basis of untimeliness.

## IV.  Disposition

Based on the above, the Court **GRANTS** defendants' motions to dismiss (Doc. 16 and Doc. 18).

The Clerk shall enter final judgment in favor of defendants, and against plaintiff, dismissing this action in its entirety with prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

The Clerk shall remove Doc. 16 and Doc. 18 from the Court's pending motions list.

**IT IS SO ORDERED.**

/s/ George C. Smith
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**